We'll hear argument first this morning in Case 12-895, Rosemond v. United States. Mr. Elwood. Mr. Chief Justice, and may it please the Court, it has long been a bedrock principle of American law that aiding and abetting liability requires proof that an accomplice act with purposeful intent to facilitate or encourage the crime of conviction and that mere knowing assistance is insufficient. Kennedy, do you agree that a jury could find the defendant guilty of the firearms charge under proper instruction? In other words, was there sufficient evidence so that if proper instruction were given, there could have been a conviction? Even if the – I think in this particular case, even if the jury had been given a proper instruction, it would have been a difficult charge to make out because the government never really argued facilitation after getting knowledge of the firearm. There was never evidence of foreknowledge. The government never asserted evidence of foreknowledge. Well, I guess we can get in later to whether or not if you know a firearm is being carried and if you then facilitate the commission of the underlying felony by driving the car, participate in the transaction, whether that's sufficient. Kennedy, I'm sorry, but let me ask you this. Would the instruction that was given, which is at JA-196, would it be okay if paragraph 1, the defendant knew his cohort used a firearm? I think there is a real problem with that because it's retrospective. Would the instruction have been sufficient if you said the defendant knew his cohort would use or was carrying? Would that change it? Well, I think at least that would have required foreknowledge, but I think it would still have been problematic because it would only have required knowing facilitation. And courts traditionally have required intentional facilitation. That is, if they intend to further the crime. Scalia, you do not agree, then, that if you know that there's going to be a bank robbery afoot and you're cooperating in that, you're the wheelman, and you also know that the people who are conducting the bank robbery are carrying firearms, you say that there's no criminal liability for the firearms unless you have the evidence that you intended them to use the firearms. Is that your position? It's our position that you could infer from the fact that you are assisting a transaction involving the bank. But knowledge is not itself a patent. No.  The question is, what does the jury have to find? I know they could – I know what they can infer. But the question for Justice Scalia is, you're the – you drive the car, you know that the firearms are there and might be used, is that sufficient? And that's his question. I think that that would be – that would support a verdict. That would support a verdict. The only question that we have here is – Well, wait. It would support a verdict. You're saying it would support a finding of intent. That's correct. But the question is whether you don't even have to use firearms. Let's assume there's a lot of evidence that he didn't really want them to use firearms, that there's no way you can say he intended them to use. But he knew that they had firearms. And I think that you could conclude from that that his purpose in assuming that you're driving the car. No, no, you can't. It's my hypothetical. And you cannot include from that there's so much other evidence. This man hates firearms. He does not like firearms. There's no way he could have intended them to use firearms. But he knew they had firearms. You know, I hate to be accused of resisting the hypothetical, because in that case I don't think it matters whether you have this subjective desire, like you think, boy, I sure wish those firearms weren't involved. But because at that point your goal is to facilitate and make sure that this bank robbery with the gun succeeds, the whole thing with the gun. So you don't have to intend, you don't have to. But that is your purpose. We would say that that is the purpose in facilitating. And the question is not just that, the question is whether you don't even have to. Okay. So if you intend a crime, if you intend a crime and you know that the crime is being conducted with firearms, that's enough. I don't think that that — I think that you have to have the foreknowledge. And I think that there are certainly ways to hypothesize. Yes, beforehand. You know beforehand that the crime is going to be perpetrated with firearms. That's all you do. You know beforehand, and you facilitate the crime. I think that you — the question is whether you can't even conceive of the circumstance where knowing — that is, participation, knowing that a firearm would be used or carried  Well, give me an example of that. For example, if you agree to drive your neighbor to pick up drugs at someplace in Philadelphia, or let's make it Pittsburgh, and then you drive him to West Virginia to spend the weekend dealing, on the way there, he tells you, the guy who distributes these to me, you know, he always carries a Derringer in his boot. And at that point, you don't facilitate his use or carriage of the gun with respect to the drug distribution offense. It has no role in the crime. And so I think you can conceive of enough circumstances. Alito I don't understand the example. The alleged aider-in-a-bedder learns about this after it's happened? That's the idea? Yes, but he's still facilitating the drug distribution offense at a time he knows that a gun is, you know, being carried in relation to it. He has no— Well, let me — maybe this is the same as Justice Scalia's hypothetical, but let me try it. Suppose that two guys have a meeting, and it's in a place that's — where there's an electronic eavesdropping device. In fact, there's a camera, so it's all recorded, so we know exactly what was said. And the principal says, here's the deal, I'm going to go rob a convenience store, and I'm going to carry a gun. And the aider-in-a-bedder says, well, all right, I'm in on the, you know, I'm in on robbing the convenience store, but I don't have anything to do with the gun. I think you should carry a baseball bat. The principal says, no, that's the deal. I'm robbing the store, I'm carrying a gun, take it or leave it, are you going to drive me there? And the other guy says, I hate guns, I don't want to have anything to do with guns, I hate this idea about the guns. They go back and forth. And the principal says finally, look, this is it, this is the deal, I'm robbing the store, I'm using a gun, are you going to help me or not? And the guy says, well, all right, I'm going to drive you, but I want it noted for the record that I'm opposed. I'm opposed to the use of a gun. And at that point, it's his purpose to facilitate a transaction and to, you know, help it succeed, and it's at a time when he knows that a gun will be used, and that, I think you can conclude that that is his purpose. So I don't really see – I can't think of a situation where a person facilitates the crime, knows what the crime is going to be, knows that a gun is going to be used, but doesn't intend for the gun to be used. In those two situations, knowledge and intent seem to me to be the same thing. The question is whether there are – because there are just no instances that are more like my hypothetical than like your hypothetical, so you don't even have to bother troubling the jury about whether they had the intent. Well, I didn't understand your hypothetical, so if you could give it to us again. Well, the point of it is that at a time when you are still participating in the underlying offense, the drug trafficking offense, you know that a gun is being carried in relation to it, but you don't have any intent to facilitate it. You don't care one way or the other if it gets used. You don't intend to facilitate it, and you don't facilitate it. And the question is whether there are – But you facilitate it. Well, but that's the conclusion. The jury, it seems to me, could say you do facilitate it if, in these hypotheticals, you drive the car with knowledge that the gun might be used. No, but the gun is not going to be used in your act of facilitation. It may be used over and you aren't doing it. Well, I – the submission is the jury could find out why. And the question is – The gun would never have been used if you didn't drive the – or carried if you didn't drive the car. But I think the jury could equally well conclude that you did not intend to facilitate the use of the gun and you did not facilitate the use of the gun. And the question is whether you even need to trouble the jury with it, because the government's instruction conclusively presumes both knowledge or concludes – conclusively presumes intent from knowledge alone, and it conclusively presumes facilitation of the gun from facilitation of the underlying offense. In my hypothetical, could a rational jury say he knew about it, but he didn't intend it? I think that in your case, with the foreknowledge and where he, you know, facilitates – he carries the gun and he carries the person to the offense – I think that that would be a tough slog. In a case – but ours is a case where there isn't foreknowledge, and the government never argued that he knew before the gun was fired. Alito, in my case, and I'll finish. I want to ask another question about this. But in my case, if the judge had given the instruction, it's enough that he knew about it. He facilitated the crime and he knew there was a gun. Would that be error? I think it would be error because you're instructing them on the wrong elements. It might be harmless error, but there is the point – both sides agree here that you have to facilitate the crime of conviction and you have to intend that the gun would be used. I don't think it's ever harmless error to not instruct the jury to – to instruct the jury not to find one of the elements of the crime. Well, if indeed intent is necessary, it seems to me he has to instruct the jury to find intent. It's not up to the court to say, well, there surely was intent anyway, so it's harmless error. The jury has to find intent. I think, you know, I'm fine with it being a harmful error, too, but my point was merely to note that I think that it is something that you have to instruct the jury on as a proper point of view, even if it's not making a difference. Sotomayor, I think what we're driving at here, and I think this is the moment you're resisting, but to me, and as you can tell from my colleague's questions, if you know that someone's carrying a gun and whether you want them to use it or not is irrelevant, if they take it out and use it and you have gone along with them in the crime, you're guilty. Okay? That's what we're driving at. Assume that I believe that. Assume that I believe that if you have knowledge of the gun and that I am participating in the crime with your knowledge of that gun, whether the knowledge is secured before the crime starts or during the crime, if I continue to participate in the crime knowing that you have a gun, then that's knowledge of the gun and intent to facilitate. I thought the example that you were relying on here, or the issue that got confused in the briefs, was whether or not from the sequence of facts in this case, you can actually discern that intent to facilitate the crime, because the alleged shooter, which your client said was someone else, got jumped into the car and the car took off before anybody could abandon the crime. That's what I actually thought this case was about. At what juncture do you instruct a jury to say that you have to be a participant with knowledge of the crime? But you're saying something different right now. You're almost suggesting that there has to be a pre-knowledge that the gun will be used. No, I don't think that there has to be pre-knowledge. My point is this, that there are circumstances, I think, where you can know of a gun. And be participating in the underlying drug, underlying predicate offense, and not facilitate the use of the gun. And I'm happy to give you another example. I'm hard to imagine that. Give me an example. For example, if you, your job, you're the lowest level guy in a drug organization, you stand on a street corner every night and you hand out drugs to anybody who comes up. You don't carry a gun. Nobody's ever carried a gun at that street corner. Why not? You're doing it, and you see that the guy's, the guy who you work for, his enforcer is coming by, and you know he always carries a gun. He walks behind you and, you know, he's present and around you for about 90 seconds. But during that time, you just do exactly what you always did. I think a jury could conclude, and I'm not saying that they couldn't conclude otherwise, but they could conclude that he didn't facilitate the use or carriage of the gun. It was just a question of what it would look like to capture the difference you're trying to convey. It would just say that the jury has to find that the defendant facilitated the use or carriage of a gun during and in relation to a crime of violence or a drug trafficking offense. And that they intended to do so. Sotomayor, you come up against the government's argument that you don't have to facilitate every element. Right. But that's the thing. Those are what we think would be the proper instruction, that they just have to be instructed on the facilitation and on the intent. I'm surprised to hear you say that you don't need prior knowledge. I think you need prior knowledge. I think you have to have prior knowledge before you facilitate it. I think that you're right, exactly. So what do you mean by you don't need prior knowledge? You don't need prior knowledge before the whole transaction happens. If you continue to facilitate, if there's an act of facilitation after you learn of it. After you know. Right, exactly. That's all I mean by the absence of prior knowledge. But I mean, everyone here agrees you need to have prior knowledge before facilitation. Mr. Elwood, you're dealing with all kinds of hypotheticals, but in this case we had a judgment, jury determination, that Rosemann was the person, he was convicted of carrying ammunition, right? There were two counts of carrying possession of the ammunition. And couldn't one infer from that that if he possessed the ammunition, he was the gun carrier? Two things, Justice Ginsburg. First, the government never raises below, and it wasn't pressed or passed on below. And so I think under Glover v. United States, this Court wouldn't ordinarily consider that in the first instance. It would leave it for remand. But secondly, I think that it's not clear enough. I mean, you can't say beyond a reasonable doubt that the error didn't infect that, too, because the jury was instructed four times that you can possess something through constructive possession, through a confederate. And I think when the jury concludes that he is guilty of a possession offense, which is 924C is a possession offense, as an aider and a better, and they may not have marked on the judge's instruction that he used the gun, he carried the gun, that the jury could have believed that they were, that he constructively possessed the gun, and thereby constructively possessed the ammunition. What was the evidence that the jury had on whether he possessed the ammunition? I think the only evidence of possession was that it was inside the gun that was fired. And I think the jury rejected the idea that he was the shooter because the two eyewitnesses said that the shooter was someone else, that the shooter was the guy in the backseat who was Ronald Joseph. Kennedy, you said the only evidence was that it was inside the gun? The ammunition was inside the gun. And the only evidence of his possession was that the shooter had it. And what was the evidence? I thought there was evidence that he possessed cartridges. No. The only evidence was that the evidence was inside the gun. I'm sorry, the evidence, that the ammunition was inside the gun. And was there any evidence that he had the gun? The evidence that he had the gun was the guy who was the other shooter. And the evidence of the gun and the evidence of the cartridges are exactly the same? They are exactly the same. The only evidence was that the cartridges were inside the gun. And the evidence, the two eyewitnesses who were at the scene said that the person got out of the driver's side, and the evidence suggests that Mr. Rosemond was on the passenger's side, and that he got out of the backseat and he was in the front seat. So the evidence, I think, is that he was merely in the car, not that he was the shooter. And the jury, remember, asked, do we have to answer question 3, which was all the different ways you can use the gun, if we find him guilty on an aiding and abetting theory, which certainly suggests they did not believe he was the shooter. Did he facilitate the crime after the shots were fired? The government did not ever argue facilitation after the shots were fired. I suspect because they only argued that he — that what happened afterwards was evidence he was the shooter. I suspect because they appreciated that the offense was over with. He was only charged with possession of marijuana with intent to distribute. When Mr. Gonzales took off with the marijuana and they lost control, you know, if they went around afterwards looking for him, which, you know, there's not even very much evidence of that. Kennedy, do we have cases that say that assisting flight immediately after the crime is not aiding and abetting the crime, the crime is over? So everybody said the crime is over, let's walk home. I am not aware, and the government hasn't cited any. I mean, there's — for different crimes, you know, there's different law about whether flight is part of the offense. But in any event, the question is whether that would be aiding and abetting that would be being an accessory after the fact. That was never charged. Is it just flight? I thought there was evidence that they were chasing the people who robbed them. There was no evidence that that intent to chase him was ever communicated to Mr. Rosemond. Well, he jumps in the car, you know, and they're going after them. That itself was disputed. But the question is, even if they're chasing him, that might be attempt to possess the marijuana to get it back. It might be conspiracy to attempt to possess the marijuana. But that wasn't charged. It might be an effort to continue the crime of the — in other words, it might make a difference whether the people who are being chased look and see two guys in the car or three guys in the car. If somebody says, and I realize you dispute these facts, let's go get them, and the guy jumps in the car, it seems to me that that's aiding and abetting the underlying illegal activity. With knowledge, of course, that those were being used. I agree. But first, that's not a theory that the government ever espoused. They never argued that facilitation. And secondly, I don't know that that would be facilitation of possession of marijuana with intent to distribute it. That ended under the court's instructions when they lost control of the marijuana when Mr. Gonzalez disappeared. I understand your argument about intent, but are you also arguing that the Actus Reis instruction was insufficient, instruction about what your client did? Yes. I think it's necessary for an aider and abetter to facilitate every element of a criminal offense. We're not saying that. We are saying that when you have to instruct them, did he facilitate the actual crime of conviction? Because what the government is doing here, what their instruction does, is it conclusively presumes that he facilitated the distinct offense, which this Court has said the entirely new crime of 924C, from the fact that they did the underlying offense. Their favorite example in the brief is a mail fraud example. But under the government's theory, because you engage in an act of mail fraud, you can be convicted of racketeering without any additional Actus Reis because that is a predicate crime to RICO. And that's the thing, is we're just saying you can't presume the full offense, facilitation of the full offense, from the fact that you just facilitated the underlying offense. Alito, if there were not the drug offense itself were not illegal, there wasn't a drug offense and then the additional firearm element, it wouldn't be necessary for the defendant to facilitate every element of that offense. It's dependent on the fact that there's this other criminal crime. We're just saying that they have to be, the jury just has to be instructed to ask, did he facilitate the crime of conviction? And they're asking a different question, essentially. They wouldn't present the same risk that you would convict someone twice and then serve two consecutive sentences under the hypothetical you suggest, but we still say they should be asked whether they facilitated the right crime. Scalia, but the crime of conviction was a drug offense with the use of a firearm, right? It was, I can report to you as a crime with a long name. And so I thought that the law is pretty clear that if you facilitate an offense, you do not have to facilitate each element of that offense, so long as you have the knowledge that that element existed. And our submission is just that the jury still has to be asked, did he facilitate the crime? This is both sides agree that you have to ask, that one of the elements is whether they facilitated the crime of conviction. But more precisely, they could be asked, did he facilitate the drug deal, knowing that a firearm was going to be used in the drug deal? Would that satisfy you? No. We think they're asking both the wrong questions, then. But is our submission to you? Scalia, I don't understand what your position is. He has to use the gun himself? No. Our only position is that they have to ask the jury, did he facilitate the 924c offense? Kennedy, I think it would help if you told us what the definition of the crime is. We'll talk about the jury instructions later. Justice Scalia is asking whether or not, if you facilitate the drug crime, knowing that a weapon is being carried, if that is sufficient for aiding and abetting as a legal matter. Forget the jury instructions. And it's our submission that you have to both facilitate the 924c offense and that you have to have the intent that the gun be used or carried during an inflation to the crime. Does that have to do with the additional 120 months? I mean, the underlying crime is 48 months. And then the gun makes it 120 months more? That's right. But it's the reason why we think it makes a difference is because it's a different crime. And the government is trying to get the jury to conclusively presume from the fact that you did the one crime that you must also have facilitated the other. And we just don't think that that is something that you can say with 100 percent certainty. Because you move it to jury determination. Isn't criminal law replete with crimes which have lesser included offenses as part of them? So wouldn't your rule be a very difficult one to apply? Because it would suggest that the person had to facilitate some part of the crime that was not a part of a lesser included offense? There are some courts that apply this to our rationale to lesser included as well. Lesser included crimes are the same crime for block broker purposes. You can't be sentenced to both the greater and the lesser. And I think most courts require that you show the intent that the gun be used. They don't as often require that you facilitate the discrete use of or carriage of a gun. Alito, let me go back to my earlier hypothetical about the taped conversation. Suppose that the alleged aider and abettor there says, I intend for you to use the  I have that intent. However, I'm not going to do one thing to help you get the gun or use the gun. I don't want to – I'm not going to – there's an actus reus problem there because he doesn't facilitate the use of the gun? Well, he may say that he's not going to facilitate it, but depending on what his actions are, he may very well may facilitate it. If he drives the gun and the person to the crime, you know, that is an act of facilitation. And so, you know, it doesn't depend on what the person says, it depends on what the person does. Kennedy, I just want to make clear, and we'll get back to the bank robbery hypothetical. Driving the car, knowing that a gun is being carried and might be used, is or is not sufficient facilitation to make you an aider and abettor in the gun aspect of the crime? I think that that would be enough, because you are carrying the gun as well as the person. If I could reserve the floor. You are not carrying the gun. Your cohort is carrying the gun. Oh, yes, you're carrying, you're, you're, by carrying, the gun is in the car. You're driving the car, the cohort has the gun, the cohort is going to rob the bank. Are you or are you not aiding and abetting because you're facilitating it by driving the car, yes or no? We would say that, yes, that is certainly enough to go to the jury, and that I think that that would be enough to show that because you're carrying both the gun on the cohort and you're carrying the cohort, that that would be enough to facilitate that. I would like to make sure. But only you say it's enough to go to the jury and what you would ask the jury to find is intent, right? That's correct. You would still ask the jury to find intent. Not just to find those facts that were stated by Justice Kennedy.  Intent and facilitation. In addition, the jury would have to find intent. That is correct. Okay. There, I would like to reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Bash. Mr. Chief Justice, and may it please the Court, I'd like to start by defining exactly what the government intends the mens rea requirement is for aiding and abetting, and then give the Court an example, two examples to show how it differs both from what Mr. Elwood is saying and how it differs from a knowledge standard. Aiding and abetting requires an intent to facilitate or encourage the commission of an offense, and I think that breaks down into two constituent parts. One, an intent to make some action easier or to encourage some action by the principal. Two, the knowledge that the principal intends to commit a crime of which that action is a constituent part. What Mr. Elwood is saying is something quite different. It's that you have to intend that the crime succeed. If that's true, all paid accomplices are out if they don't intend that the crime succeed. If the bank robbers say, hey, can you look the other way, security guard, while we go into the bank, we'll give you $1,000 if you do it, that's not aiding and abetting under his theory. If the security guard says, well, I only wanted $1,000, I didn't care whether you ultimately succeeded in the bank. We give an example in our brief. If the person actually gives the gun so it meets the actus reus requirement that Mr. Elwood has proposed, he actually gives the gun to somebody, not because he cares if that person commits the crime, which he knows he intends to commit, but as a favor or as a friendly gesture.  Roberts. That's a very fanciful hypothetical, because the one thing the guard is going to know, that if the robber gets caught, he's in great jeopardy of being caught himself and convicted. Of course he wants the crime to succeed, because he doesn't want the people to be there and being pressured by investigators or whatever to say, okay, well, you know, who was in on this with you. So if you're being paid for a crime to assist in the commission of the crime, you want it to succeed. Well, if your payment is not coming from the loot, I don't think that's really true, but let's take that as true as given. I mean, go back to my example about the guy that's just doing a favor from somebody. Sure, you can use my gun to commit a robbery. I don't have any stake in it. If you decide tomorrow that you don't want to commit the robbery, that's fine. He has a stake in it. If the guy is caught, the police are going to say, where did you get the gun? He may turn him in or not, but it's certainly a danger, a danger that wouldn't be there if the crime succeeded. I don't think that's the sort of intent requirement that Mr. Elwood is talking about. I mean, I think he's talking about an intent that's abstracted from the idea that if you get caught, everybody might go to jail. I mean, that sort of seems to beg the question of whether you're actually going to be liable for the gun. Ginsburg. Ginsburg, why don't we just take it that we have a crime, the underlying crime, it's a 48-month crime, and then if you have a gun in connection with that crime, it becomes 120 months consecutive, and your position seems to be that all you have to prove is facilitation of the underlying drug offense. And it seems to me to get 10 years of your life for government proving no more than the 48-month charge is a bit much. It's not proving no more than the 48-month charge. Now, just as a footnote, it's 10 years only if the gun is fired. It's 5 years if it's carried or used, which obviously creates a much greater danger to people's lives and property if it's fired. But it's not only proving that you facilitated the drug offense. It's facilitating the drug offense with the foreknowledge that a gun was going to be involved in it. And the other thing is that if you have a gun in connection with that crime, it's   Kennedy, but this instruction at J.A. 196 says that the defendant knew his cohort used a firearm. It really should say that knew his cohort would carry a firearm. Because I, when I read this, I thought, well, given these confusing facts, a jury might think that there's liability if he knew that a firearm was used, which is a very odd interpretation, but that's the instruction lends itself to that interpretation. Justice Kennedy, that is an odd interpretation and it's wrong, and we do not contend that liability could be imposed if you learned of the gun only after your participation ended. A couple points on that. Kennedy, but do you agree that, taken by itself, that one could be read that way? Well, I don't think read in context of the full instruction. If you look at the paragraph. I said taken by itself. Oh, so not the instruction taken by itself, but one phrase in the instruction taken by itself. I think it's possible, but I think if you read it in the context of the full charge and what reasonable jurors would think, you have the formulation right above that on page 196 that mirrors exactly the Peone standard. And I don't think reasonable jurors reading that in conjunction with the more specific instruction on count two could think that he could be liable if his participation ended only after the firearm was used. And, Justice Kennedy, nobody below thought that, because Petitioner never objected on the ground that the particular wording of this instruction allowed conviction if you gained knowledge only after your participation. So he minimized. He proposed a different instruction that departed from the instruction that was given on that point. Mr. Chief Justice, first of all, under Rule 30, it's not enough to propose an alternative instruction that does not contain the defect. You have to lay out the specific grounds for your objection. He did not do that here, so it should be plain error review. That's doubly true here where his instruction had its own error. His instruction would have required intentional facilitation of the gun, which is the question on which this Court granted certiorari. His instruction had a Two wrongs don't make a right. Well, two wrongs don't make a right, but he certainly did not comply with the Rule 30 standard for raising the objection with respect to foreknowledge that he's proposing now. So at minimum, that should be reviewed for plain error. In addition, even if the Court believes that we waived the harmless error argument by not raising it below with respect to his primary argument, the Court should certainly hear our harmless error argument with respect to the ammunition counts with respect to instructional error that he did not raise below. Kennedy, look at his instruction and think about the bank robbery hypothetical with the driver of the car. His number two is that they intentionally took some action to facilitate and encourage the use of the firearm. I think that would be an okay instruction in the bank robbery hypothetical. He drove the car. The principal object was to rob the bank, not to use the firearm, but he facilitated the use of the firearm. I can see that a judge could give that instruction. I think the only way Petitioner fits that instruction into his view of the law is because the driver started out driving the people to the bank, so he says, oh, well, you're satisfying my actus reus requirement because you actually transported the guns to the  But tweak the hypothetical a little bit. Suppose the getaway driver is paid only to show up at the end and to, you know, ferry the bank robbers away. He knows all along that it's going to be a firearm offense. I'm pretty sure Mr. Elwood would say, because you took no act facilitating the gun in that case, you only sort of showed up at the end, even though you knew a gun would be used, that that's not facilitation. So I take your point, Justice Kennedy, that in a wide swath of cases it may not matter, but I think in some cases it is going to matter. And take his intent requirement. I mean, the person that lends the gun just to be a good guy, not because he cares about the offense, I'm pretty sure he's out. And if the jury is convinced, hey, I knew he was going to commit a robbery or an assault, but I just did not care. If the jury is convinced by that, he is acquitted, and that can't possibly be right. He would not be guilty of any 924C offense at all. I mean, not only the 10-year-old. Sotomayor-Gillian, could you talk practically about what the difficulties are for the government in these scenarios? It's nice to put hypotheticals in where you know, where you say someone knew X, Y, and Z. The reality is in most cases you don't. Occasionally you get a co-conspirator that will tell you, but in most cases you have just the act. Defendant is present during a crime, a gun is pulled, and he leaves with his cohorts. You don't know whether he had advanced knowledge that the gun would be used because he wasn't carrying it, and he may have done nothing but be present during the crime, left, and got a split of the money later, correct? If he continued participating after he learned of the gun, yes.  that's your point, right? That's your point. If he learned of the gun and said, hey, I'm at it, I'm guilty. Sotomayor-Gillian, so isn't this really an argument about how you define facilitation? You're not arguing that some form of participation in the crime with knowledge that the gun is being used is required. You're really arguing about how far the proof has to go. Your adversary keeps saying mere knowledge that the gun is being used is not enough. I think it's more qualitative than that, and the question suggests it's purely quantitative. It's qualitative in the sense that the facilitation can relate to either element. So it can relate to the gun in particular, or this could be the guy that set up the drug deal knowing that a gun would be involved, or set up the robbery knowing that a gun would be involved. I think you see in the court appeals cases here the practical difficulties that come in, because although most courts of appeals, I think eight, have technically adopted the position that you have to facilitate the gun in a direct way, if you look at the actual holdings of the cases, it doesn't differ in practical application from our approach. It's there's one case, I think it's Price out of the Third Circuit, where the guy may have learned of the gun, and I may have the case name wrong, but the guy learned of the gun only as the robbery was taking place, but he continued to participate in the robbery while his confederate brandished the gun, he collected the money, and so forth. And as far as your question about the practical problems, I mean, I think explaining to a jury what does it mean to facilitate the gun in a specific way during a crime like that is incredibly difficult. I mean, we say in the brief, what if you're exchanging the money while the other person is brandishing the firearm? Maybe that person was not going to do it. Sotomayor What's so hard about saying did you have knowledge that the gun would not be used either, and you facilitate, but you continue to facilitate the crime? The underlying crime. Bashiro We agree that that is the law. Kagan Well, Mr. Bash, what about this case? Suppose that there are two guys and they're talking about committing a crime, and they have the same kind of conversation that Justice Alito was referencing. You know, one guy says I want to bring a gun, the other says, no, I think that's a really bad idea. But this time the guy says, okay, you've convinced me it's a bad idea to bring a gun, I won't bring a gun. And so then they go out and they rob whatever they're robbing, and in the middle of it, you know, or they do a drug transaction, and in the middle of that drug transaction, the guy who said don't bring a gun looks over and he realizes that notwithstanding the promise, his confederate did bring a gun. But there they are, they're in the middle of their drug transaction. So the guy, you know, they're in right, they're handing the money to each other and the guy keeps on doing it, all right? Is that enough, even though, you know, there's foreknowledge, there's acts after he realizes that the guy has a gun, is that sufficient? Bashiro If the gun is drawn and the person continues to facilitate the drug crime or the violent crime, that is enough. Kagan But what exactly would you want him to do at that point to not be convicted of this offense? Would you want to just say, you know, sort of like drop everything, I'm out of there? Is that the idea?  Take this case. This is an $800 marijuana deal. It's a small-scale drug deal that happens all the time without firearms. As Mr. Elwood says, usually this kind of deal is not done with a firearm. Only 5 percent of marijuana offenses have a firearm. Yes, if you're on that kind of small-scale deal and all of a sudden it becomes an armed offense, you do have an obligation to withdraw. Now, of course, I think you might have a duress defense if you felt like, if I withdraw, I'm going to get shot or something like that. Kagan Right. I mean, I guess that's the question. Is there always a reasonable opportunity to withdraw after you see that there's a gun in the offense that you didn't expect to be there? And do you think that there has to be a reasonable opportunity to withdraw? Or would you say, no, everybody has a reasonable opportunity to withdraw all the time. You can just leave? Bashiro Two points on that. First, I think a lot of that would come into the duress defense. I mean, if you really feel like, oh, my God, this guy has a gun and he might shoot me if I withdraw, I think you have a pretty solid duress defense. The other point I would say, which is maybe a little tangential to the hypothetical, is there's a traditional doctrine of aiding and abetting law. This is at 2.06 of the Monopenal Code. It's in the Lefebvre Treaties and the Wharton Treaties, that if you countermand your assistance after you've assisted but before the crime is accomplished or completed, for example, if your assistance was only encouraging, you start discouraging, or if you take all actions possible to prevent the crime, for example, you assisted, you have a change of heart, you call the police to prevent the crime, you're not liable for aiding and abetting. And I think that reflects a broader point, which is that the traditional common law contours of aiding and abetting work pretty well with the contemporary purposes and problems that this statute was designed to solve. I mean, this is a statute about the mix of guns and drugs or guns and violence. And I don't see why Mr. Elwood contends that if you assist one side of that equation or the other, it's a different result. I think if you assist either side of that equation, knowing that the equation is going to happen by the principle that's aiding and abetting. It's aiding and abetting under the historical test. I think it's aiding and abetting under this Court's cases. And I don't see why there would be a different result here.  Ginsburg. Mr. Bash, would you explain why in this situation the gun abetted a drug deal when there was no drug deal it had been thwarted? The drugs were stolen. They were not engaged in any attempt to sell the drugs. That was a failed attempt. So how is this gun abetting a drug deal when the deal failed?  Well, of course, the prosecution's principle theory was that he was the gunman. He brought it along to facilitate his drug deal. But assuming the theory of the facts that the gun was fired after Gonzales absconded with the drugs, I mean, I think one way to think about it is like this. Suppose that what had happened is that Gonzales had gotten 10 paces and Petitioner or Joseph had tackled him and immediately snatched the drugs back. I don't think this Court or courts generally would expect the government to charge two counts of possession with intent to distribute for that brief period in which someone snatches possession away and you get it. That was certainly what the prosecutor thought here. And it's obviously not the issue in this case. The only way that question comes into this case is that Mr. Elwood is trying to say that the prosecutor understood that you didn't need foreknowledge of the gun. And that's not what the prosecutor understood. The prosecutor understood that this offense could continue for at least some period after in which the Confederates gave chase to reclaim the drugs. And that may have been a wrong theory, but no one below ever understood that you could be convicted if you didn't know of the gun until your participation ended. That's why Petitioner never objected on that ground. And that's why, of course, we submit that it should be reviewed for plain error. Alito, you agree that for aiding and abetting, you must the gun offense, you must have knowledge that the gun is being carried by the cohort. Yes. You agree with that? Carried or used, yes. Alito, could the defendant here have been convicted of possession of the ammunition on the theory under the instructions? Would the instructions have allowed that conviction on the theory that the defendant aided and abetted somebody else's possession of the ammunition? I don't think so, because the judge never instructed that if you aid and abet, that's the equivalent of constructive possession of the bullets. In fact, I mean, what constructive possession means is you had the ability to exercise control over this, over the ammunition. So it doesn't gel with his theory that, oh, I didn't know about the gun until after the shots were fired. I mean, I don't think anyone thought that you could get conviction because the shells were on the ground or something and you could pick them up after they were fired. The obvious view was that he was the person who shot the gun, and at minimum, I think those convictions, because there were no aiding and abetting instructions on them, show that he must have known about the gun ahead of time if he could exercise at minimum constructive possession over the ammunition fired from him. What's the point of charging him with possession of the gun and possession of the bullets in the gun? It would seem to me that the proof would be pretty much the same. The proof was the same in this case. They didn't charge him with possession of the gun. They charged him with usurpary enduring in relation to the drug trafficking offense. And then there were two counts of possession of the ammunition which were linked to his felony status and his alien status, unlawful alien status.  Well, I guess then the question is what's the point of charging him with possession of the bullets if you're not charging him with possession of the gun? We could have charged him with possession as a felon. We didn't. It's not totally clear to me why we didn't, but we certainly could have charged him with being a felon in possession of a firearm in this case. Mr. Bash, you know, what sticks in my crawl a little bit about your position is this. Usually we want punishment to two people and they do very different things and they have very different intents. We want them actually to be punished differently. And what you're suggesting is that there's, let's say, a crime, two people are involved in it. One person does almost everything. You know, he does 90 percent of the stuff. And the other person does just a little thing. But something, you know, that goes to the offense, that helps facilitate the offense, but it's really pretty small compared to the overall crime. And then in addition to that, that person does not have really full-fledged intent, just has a kind of knowledge that this other person with real purposive intent is going to bring a gun. So you have a lesser act and a lesser intent, and notwithstanding that, you're saying that the person ought to be punished in the exact same way as his confederate. We are saying that. I think that gels with the historical law of aiding and abetting, which, as Judge Friendly said in the case we saw in the brief, Gargulo, assistance of even slight moment counts. And as I said, I think that's what I would have thought was that the actus reus can be very small, but almost to compensate for that, you have to have full-fledged intent. You have to have a really kind of purposive – a purpose that the crime succeed as opposed to just knowledge of what will happen. Justice Kagan, I don't think that can be right for the examples I gave, paid accomplices that don't have a stake or the person who lends the gun to be a good guy. And let me contrast that I never got to this example with what a pure knowledge standard would look like. Suppose there was looting and the defendant breaks into a store to facilitate his own entry in the store to steal goods, but he knows there's 20 people coming behind him and he has now facilitated their entry into the store, too. That is not aiding and abetting under our theory, because he did not even bear the intent to facilitate, by which we mean the intent to make some step in another person's crime easier. He knew it would do that, but that was incidental to an intent to facilitate his own crime. So I do think the mens rea is significantly ratcheted up from what a pure knowledge standard would look like. Kennedy, would you agree that in order to show aiding and abetting, and I'll just quote from a California case here, that the aider and abetter has to have knowledge of the criminal purpose of the perpetrator and the intent to facilitate it?  I think what that formulation masks is exactly what intent to facilitate means, and I think that might be part of the disagreement among the parties. And what we say is that it means an intent to make some step in what you know is a crime that he intent the principal intends to do easier. And we think it's got to be that. That's also the formulation in the historical sources. We cite at page 47 in footnote 10 of our brief. It's either the intent to commit the crime yourself or knowledge that the other person has that intent. And I don't see how it can be anything else. I mean, if you assist someone in a – just to be a good person, not because you care if the crime succeeds, and if you ask them with the truth serum, do you want the crime to succeed, you say, well, I'm totally indifferent to the crime. Kennedy, would you agree that the statement, that the first part of the instruction that the district court gave the defendant, knew his cohort used a firearm, is inaccurate, is incomplete, potentially misleading? In isolation, potentially misleading. I think in context, how reasonable jurors would understand this and how the parties understood it, because no one raised an objection to this below, I think they understood that your knowledge had to arise before your completion of your participation in the investigation. Roberts, you would never, if you got a call from the U.S. assistant U.S. attorney in the field, said this is the instruction I'm going to use, you would tell them, no, don't do that. We wouldn't. But the reason this Court has or the reason courts generally have objection rules is when questions about particular verb tenses and phrasings arise, the defendant or one of the parties is supposed to actually object to that in the district court. That didn't happen here. No, I know you have arguments about failure to object and harmless error, but in the substance of it, you think the instruction, you would never counsel someone to give that instruction. Well, I think as we said in the brief, it would have been clearer to say would use or something that makes absolutely clear that you required foreknowledge. I think if the Court has questions about this sort of case-specific issue, along with the forfeiture and waiver and harmless error and plain error issues, it could do this. This would be a sensible result. It could clarify, one, facilitation with respect to either conduct element is enough as far as actus reus. Two, the intent to facilitate means an intent to make some step in that crime easier combined with knowledge that the principal bears the intent to complete the crime. And then it could remand to the court of appeals to say, sort out whether this instruction was wrong, whether that objection was forfeited, whether harmless error or plain error concepts come in here. Why do you say, you say, in context it was okay? What context? The, Justice Scalia, the instruction, or part of the same instruction, the paragraph immediately before, just mirrors that. That's it? Just that. In order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associated himself in some way with the crime. Well, to help make the crime succeed, and I think a reasonable person reading that would not think I helped make the 924C crime succeed if I didn't even know about the gun until I was after doing what – I was done doing whatever I was going to do. And I also point the Court to page 194, which makes clear that knowingly in that second part of the instruction is defined as voluntarily and intentionally. So you certainly had to intentionally participate in a drug trafficking crime. And that part of the context, as this Court has said, is also the context of the instruction. Sotomayor, I'm sorry, but I'm not saying that a gun would be used. You had to intentionally participate knowing that a gun would be used. Basically a slight tweak, which is knowing that the principal bore the intent to use a gun. Obviously, you can't know the future. It's that you know that the principal bore that intent, which is a little bit different, but I think we're saying the same thing. I don't see how make the crime succeed helps you, because you would say the crime that he has to help make succeed is the underlying drug offense, not the use of the firearm. No, Mr. Chief Justice, we wouldn't say that. This umbrella instruction applied to count 1 and 2. The crime you're help making succeed is 924C. What I was saying earlier was that what does it mean to help make a crime succeed? It makes — it means intent to make one — at least one step in that crime easier knowing the other person bore the intent to do the crime. And I think that's how we normally think about it. If there's an armed robbery and you say, well, I'll drive the getaway car, I think you would naturally say in ordinary English you intended to help make that crime succeed, even if you didn't bear a specific intent with respect to the gun. I certainly think on, you know, if this had been objected to below, it might be a different matter with Mr. Elwood, but he did not object to this below. He didn't raise this wording issue even in the court of appeals. He raised a sufficiency challenge with respect to foreknowledge. But he — even in his court of appeals brief, he didn't say that the instructions in this case were wrong because it said used versus would use. So I don't think the issue is properly here, but I think it would be a sensible resolution if the Court were to remand these case-specific issues after clarifying the basic standard of aiding and abetting to the court of appeals to work through the forfeiture and waiver and harmless error and so forth. If there are no further questions.  Thank you, counsel. Mr. Elwood, you have four minutes remaining. Thank you, Mr. Chief Justice. One point that I want to emphasize is a point made by Justice Kagan, which is that traditionally because the actus reus is relatively small for aiding and abetting cases, that is exactly why courts have adopted a standard of purposeful intent. And they have said that because the act of an accomplice tends to be less harmful and tends to be more equivocal than that of the principal, that they ordinarily require purposeful intent. And as Professor Wayne Lefebvre said, who obviously doesn't have a stake in the case, liability has seldom been imposed on the basis of knowing assistance. The background rule is that it has to be purposeful intent. Breyer, what cases should I look up for that? That is to say, I thought generally in the criminal law a person who commits an illegal act is liable for the known consequences of that act. That's the general rule. I can't think of any other rule. I mean, people use all kinds of terminology, you know, different kinds of terminology, but I thought that's the basic principle. The standard for accomplice liability requires purposeful intent. It's generally true. Breyer, where do I say it when you say purposeful intent? He didn't want it, but he knew it would happen. And moreover, he helped to produce the occasion on which it would happen. It was his purpose for doing it. And the cases you can look at are Nye and Nissen. Well, just tell me where in the brief they are. Or whatever's easy to read. I mean, Nye and Nissen, the Nye and Nissen, which is a case of this Court from 1949 where the Court adopted the standard from the Learned Hand case, Peone, that adopted the purposeful intent standard. And Peone is obviously a very important case as well. But Hicks. In Hicks, in 1893, this Court reversed the conviction because the jury instruction did not require proof of intent to encourage the conviction. Breyer, we used the word intent. Some people used it in order to encompass the situation of the known but undesired consequence. Right. But the Court went on to say that action for any other purpose, even if with the – even if it had the effect of the conviction. I'm sure you'll find language. I want, really, an instance where the holding of the case is that a person who commits an unlawful action with knowledge that the other unlawful action will occur is not liable for it. I would admit that, you know, blowing up the carriage and you kill the maid who was supposed to kill you, you didn't want to kill, you're liable. I would point you to Lefebvre. I'm sorry, I don't have a case off the top of my head. I know that they state the principle, but Lefebvre, Chapter 13.2, collects cases, and he makes the point there that liability has seldom been imposed on the basis of knowing assistance. For aiders and abettors, you have to have purposeful intent. That's Fay? Lefebvre. Lefebvre. Queen Lefebvre. Counsel, do you have anything for us on Rule 30? You know, on Rule 30, I won't pretend that it was a model of clarity and preserving the error about after-arriving, after-arising intent. But I will say that there is no contest. I mean, that is, to us, just as a sign that of how messed up the jury instructions are. But we did preserve, we say, the — our objection both with respect to the absence of facilitating the right offense and the intent to commit the crime as opposed to knowledge that the gun would be used. And how did you preserve that objection? With respect to intent and by objecting to their instruction on the basis that it didn't include intentional facilitation of the 924c offense. And if there are no further questions, we will rely on our submission. Thank you, counsel. The case is submitted.